Littlefield v. Acadia Ins. Co.        CV-03-220-B    05/11/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Daniel Littlefield</u>

   v.   _____Civil No. 03-CV-220
_____Opinion No. 2004 DNH 084
<u>Acadia Ins. Co., et. al.</u>


<u>MEMORANDUM AND ORDER</u>

This cases arises out of a tragic event on Lake Winnipesaukee.  On August 11, 2002, Daniel Littlefield drove his father's 36-foot yacht into another boat causing the death of one of its passengers, John Hartman.  Littlefield was convicted of negligent homicide.  Hartman's estate and his widow, Karen Hartman, have brought a wrongful death action against Littlefield, now pending in state court.  Littlefield filed this action also, seeking a declaratory judgment that Acadia Insurance Company ("Acadia") is obliged to indemnify him for any damages awarded.  Acadia seeks summary judgment on the ground that the policy's "criminal acts" exclusion relieves it of any obligation to indemnify Littlefield.  Littlefield has filed a cross-motion for summary judgment.  For the reasons discussed below, I grant

Acadia's motion and deny Littlefield's cross-motion.

## I. BACKGROUND

Daniel Littlefield crashed into another boat while operating his father's yacht. John Hartman, a passenger on the other boat, was killed. Following the accident, Littlefield was indicted on two felony counts. He was convicted of a violation of N.H. Rev. Stat. Ann. § 630:3 (I), a class B felony. The charge on which Littlefield was found guilty states that he "did negligently cause the death of another while operating a boat, in that Daniel Littlefield operated a boat . . . and failed to keep a proper lookout and the boat operated by Daniel Littlefield struck a boat in which John Hartman was a passenger and that John Hartman died as a result of the injuries received in the collision." (Pl.'s Mot. Summ. J. Ex. 1 at 4). John Hartman's estate and widow brought a civil suit for damages against Littlefield.

Littlefield's father's yacht was covered by an insurance policy by Acadia, which was in effect at the time of the accident. The policy excludes coverage for any "loss, damage or expenses caused by or resulting . . . [from] any loss, damage or liability willfully, intentionally or criminally caused or

incurred by an insured person." (Def.'s Mot. Summ. J., Aff. Patrick M. O'Toole Ex. A at 8). Acadia seeks summary judgment on the ground that coverage is barred by the policy's criminal acts exclusion.[1]

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one

---

[1] In an objection to Acadia's motion, Karen Hartman argues that Acadia has waived any right it may have to exclude coverage based on the "criminal acts" clause. She relies on her characterization of Acadia's interrogatory responses, claiming that Acadia has never before sought to enforce this exclusion. I read Acadia's responses differently. Acadia did not claim that it had never enforced the clause. It only stated that it could not respond because its files were not catalogued in a manner that would readily yield an answer.

that affects the outcome of the suit.  Id. at 248.  In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmovant and determine whether the moving party is entitled to judgment as a matter of law.  Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

Where the nonmoving party bears the burden of persuasion at trial, it must "make a showing sufficient to establish the existence of [the] element[s] essential to [its] case" to avoid summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  It is not sufficient for the nonmovant to "rest upon mere allegation[s] or denials [contained in that party's] pleading."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, 477 U.S. at 256).  Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the nonmoving party." Id. at 842 (internal citations omitted).

Where the moving party bears the burden of persuasion at trial, the movant must support its position with materials of evidentiary quality.  See Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 n.1 (1st Cir. 1994).  Further, "[the] showing

must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).

I apply these standards to the parties' summary judgment motions.


### III. ANALYSIS

I interpret the policy using New Hampshire law. See Acadia Ins. Co. v. McNeil, 116 F.3d 599 (1st Cir. 1997). Accordingly, I first outline New Hampshire's relevant rules of policy construction and then apply those rules to the facts at issue in this case.

### A. Policy Construction Rules

Determining the meaning of a provision contained in an insurance policy presents a question of law that must be resolved by the court. Pro Con Constr., Inc. v. Acadia Ins. Co., 147 N.H. 470 (2002); High Country Assocs. v. New Hampshire Ins. Co., 139 N.H. 39, 41 (1994). When answering this question, the court must first determine whether judicial precedent "clearly defines [the] term at issue." Coakley v. Maine Bonding & Cas. Co., 136 N.H.

402, 409-10 (1992).  If such precedent exists, the court "need look no further than that definition."  Id.

If a prior Supreme Court decision has not previously defined a disputed policy term and the policy itself does not define the term, the court must "construe the policy in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured."  Coakley, 136 N.H. at 410 (internal quotations omitted).  If the policy term is unambiguous when construed from this perspective, the court must give the term its plain meaning.  Id.  If, however, an ordinarily intelligent insured could reasonably interpret the policy in more than one way and one of the plausible interpretations favors coverage, the policy must be construed "in favor of the insured and against the insurer."  High Country Assocs., 139 N.H. at 41.

In determining whether a term reasonably can be interpreted in more than one way, New Hampshire courts look to (1) the plain language of the policy provision in dispute, see High Country Assocs., 139 N.H. at 41; (2) whether differences of opinion exist among other jurisdictions concerning the meaning of the term, see Hoepp v. State Farm Ins. Co., 142 N.H. 189, 191 (1997); and (3) whether dictionaries provide alternative definitions of the term,

see <u>Hudson v. Farm Family Mut. Ins. Co.</u>, 142 N.H. 144, 146-47 (1997); <u>Coakley</u>, 136 N.H. at 417.

## B.  <u>Application</u>

The policy excludes coverage for "any loss, damage or liability willfully, intentionally or criminally caused or incurred by an insured person."  (Def.'s Mot. Summ. J., Aff. Patrick M. O'Toole Ex. A at 8).  It is undisputed that the damages for which Littlefield seeks indemnification were the result of his criminally negligent behavior.  Acadia thus argues that this undisputed fact plainly brings the case within the scope of the policy's criminal acts exclusion because Littlefield "criminally caused" the damages for which he is seeking indemnification.  Littlefield, in turn, contends that the phrase "criminally caused" is ambiguous.  Because the exclusion appears in the same sentence with exclusions for "willfully" and "intentionally" caused damages, he argues, a reasonable person would construe the exclusion to similarly apply only to willful or intentional crimes.

I agree with Acadia.  It is well understood that negligence can be criminal when it results in death.  The policy does not expressly limit the exclusion to intentional crimes and the mere

fact that the phrase is grouped with exclusions for willfully and intentionally caused acts would not cause a reasonably informed insured to read a limitation into the exclusion that it does not contain. Accordingly, I hold that the policy unambiguously excludes the claim for which Littlefield seeks indemnification.[2]

## IV. CONCLUSION

For the reasons stated above, I grant Acadia's motion for summary judgment (Doc. No. 8). Littlefield's cross-motion for summary judgment is therefore denied (Doc. No. 10).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 11, 2004

cc:  Gordon A. Rehnborg, Jr., Esq.
     Leonard W. Langer, Esq.
     William D. Pandolph, Esq.
     Emile R. Bussiere, Esq.

_____

[2] I also reject Littlefield's argument that the exclusion in unenforceable because it is contrary to public policy. While reasonable people can disagree about whether an insurance company should be permitted to offer insurance that fails to cover liability that results from criminally negligent conduct, the arguments supporting Littlefield's position are not so strong as to render the clause unenforceable.

-8-